IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAWRENCE MOTTEN AND DONNA EVANS, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-10-4994 |
| | § | |
| CHASE HOME FINANCE AND | § | |
| WILMINGTON TRUST COMPANY, et al. | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court in the above referenced cause, removed from state court and alleging wrongful foreclosure, are Defendant Chase Home Finance LLC's ("CHF's") motion to dismiss for failure to state a claim, or alternatively, motion for more definite statement (instrument #4) and Plaintiffs Lawrence Motten and Donna Evans' request for leave of Court to file amended petition (#18).

This case arises from a mortgage loan obtained by Plaintiffs, secured by their homestead property at 10002 Williams Field Drive, and serviced by CHF. Plaintiffs ask the Court to invalidate a foreclosure sale and issue a temporary, and ultimately a permanent, injunction barring CHF from proceeding with its wrongful foreclosure on the property and prohibiting Wilmington Trust Company ("Wilmington") from going forward with eviction.

### Standard of Review

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."   When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted).   "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").   "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . .

(1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). *See also Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, *14 (S.D. Tex. Jan. 31, 2008).  "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).  Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 129 S. Ct. at 1940, the Supreme Court, applying the *Twombly* plausibility standard to a *Bivens* claim of unconstitutional discrimination and a defense of qualified immunity

for government official, observed that two principles inform the *Twombly* opinion: (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." . . . Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."; and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949. The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank*

-4-

*PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994).  *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken"). Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment.  *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. Jan. 25, 2011).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom. Cloud v. United States*, 536 U.S. 960 (2002), *cited for that proposition in Baisden v. I'm Ready Productions*, No. Civ. A. H-08-0451, 2008 WL 2118170, *2 (S.D. Tex. May 16, 2008).  *See also ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 57 (S.D. Tex. 2007)("Dismissal "'can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" [citation omitted]), *reconsidered in other part*, 396 B.R. 278 (S.D. Tex. 2008).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with

-5-

prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]"). The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

Fraud claims must also satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b): "In allegations alleging fraud . . ., a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." A dismissal for failure to plead with particularity as required by this rule is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). The

Fifth Circuit interprets Rule 9(b) to require "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005).

Because "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not," it applies to statutory claims based on allegations of fraud. *Lone Star Ladies Inv. Club v. Schlotzky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994).

### CHF's Motion to Dismiss

CHF argues that the Plaintiffs' Original Petition and Application for Injunctive Relief (#1, Ex. A-2) fails to plead a viable cause of action. A plaintiff asserting wrongful foreclosure must show (1) a defect in the foreclosure sale proceedings, (2) a grossly inadequate selling price, and (3) a causal connection between the defect and the grossly inadequate selling price. *Sauceda v. GMAC Mortgage Corp.*, 268 S.W. 3d 135, 139 (Tex. App.-- Corpus Christi 2008, no pet.), *citing Charter Nat'l Bank-Houston v. Stevens*, 781 S.W. 2d 368, 371 (Tex. App.--Houston [14th Dist.] 1989, writ denied). Moreover there must be evidence of an irregularity that "must have caused or contributed to cause the property to be sold for a grossly inadequate price." *In re Keener*, 268 B.R. 912,

921 (N.D. Tex. 2001).  The plaintiff challenging a foreclosure sale must plead and ultimately prove any irregularities that rendered the sale invalid.  *Id.*  CHF insists that Plaintiffs here fail to assert any facts supporting the elements of a wrongful foreclosure action and provide no facts establishing a causal connection between the defect in the foreclosure proceedings and the grossly inadequate selling price.  They also fail to show that the property sold for an inadequate price..

Furthermore Plaintiffs appear to assert a claim for an unspecified violation of the Real Estate Settlement Procedures Act ("RESPA"), codified at 12 U.S.C. sec. 2601, *et seq.*  No provision of the RESPA is cited, but the petition asserts that Plaintiffs sent a "qualified written request" ("QWR") to CHF which may be the basis of the RESPA claim.  Under Section 2605 of RESPA states that a servicer must respond to a QWR within sixty days of receiving the request.  12 U.S.C. sec. 2605.  The response must either make corrections in the borrower's account or explain why the account is correct or why the servicer cannot respond to the request and provide the borrowers with the name and telephone number of a person to whom the borrower can seek information.  Plaintiff plead that CHR responded to their QWR and that they reviewed that response and asked about alleged "discrepancies in the amount of escrow impounds [for] taxes."  Because they allege that they communicated with a CHF employee about their concerns and received

the information they sought, CHF did not violate Section 2605 of the RESPA.  Plaintiffs fail to specify any particular provision of the RESPA that CHF purportedly violated, but broadly assert that CHF "failed to follow the federal statutes under R.E.S.P.A. and i[s] not entitled to proceed with the wrongful foreclosure." Because they fail to state a claim, their request for injunctive relief also fails to state a claim supporting entry of a judgment. *Butnaru v. Ford Motor Co.*, 84 S.W. 3d 198, 210 (Tex. 2002).

Alternatively, CHF seeks a more definite statement under Federal Rule of Civil Procedure 12(e) (When a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before submitting a responsive pleading).

**Plaintiffs' Response and Motion for Leave to File Amended Petition**

In their response (#8) and by motion (#7) Plaintiffs seek leave to file an amended pleading (which should be titled a "Complaint" in federal court) to cure the defects in their state court Original Petition.  Their proposed pleading is filed as #7-1. The Court notes that in discussing the standard for pleading, Plaintiffs fail to take into account the effect of *Twombly* and *Iqbal* on pleading standards under Rule 12(b)(6), which the Court has summarized earlier and which JPMC points out in its reply (#11).  One of the reasons the Court chooses to permit Plaintiffs

-9-

to amend again is this confusion, especially since this case was removed from state court where it was subject to Texas' more lenient notice pleading.

### JPMorgan Chase Bank, National Association's
### Response in Opposition to #7

While CHF's motion to dismiss addressed the Original Petition drafted in state court, in response to Plaintiffs' request for leave to amend with their proposed pleading attached, JPMorgan Chase Bank, National Association ("JPMC"), as successor by merger to CHF, opposes the motion for leave to amend because Plaintiffs waited nearly four months to file it and on the grounds that even the proposed amended petition fails to state a claim that is plausible on its fact and the requested amendment is futile. Plaintiffs attempt in their proposed amended petition to assert causes of action for promissory estoppel, breach of contract, and breach of good faith and fair dealing, but their allegations "are nonsensical, conclusory, and at times incomprehensible."

JPMC contends that Plaintiffs provide no facts in support of their claims of promissory estoppel and breach of good faith and fair dealing. Furthermore, Plaintiffs cannot recover for a promise under promissory estoppel when the promise is part of a valid contract. *Fertic v. Spencer*, 247 S.W. 3d 242, 250 (Tex. App.--El Paso 2007, pet. denied), *citing Subaru, Inc. V. David McDavid Nissan, Inc.*, 84 S.W. 3d 212, 226 (Tex. 2002)("promissory estoppel

doctrine presumes no contract exists"). Their claim for breach of duty of good faith and fair dealing also fails because "[t]he relationship of a mortgagor and mortgagee ordinarily does not involve a duty of good faith. *FDIC v. Coleman*, 795 S.W. 2d 706, 709 (Tex. 1990), *citing English v. Fischer*, 660 S.W. 2d 521, 522 (Tex. 1983). Thus these two claims lack a legal basis and should be dismissed.

As for Plaintiffs' breach of contract claim, to state such a claim Plaintiffs must allege (1) the existence of a valid contract, (2) performance by Plaintiffs, (3) breach by Defendants, and (4) damages resulting from the breach. *Acad. Of Skills & Knowledge, Inc. V. Charter Schs., USA, Inc.*, 260 S.W. 3d 529, 536 (Tex. App.-- Tyler 2008, pet. denied). JPMC charges that "Plaintiffs do not expressly allege a cause of action for breach of contract, and it is unclear whether Plaintiffs attempt to assert such a claim." JPMC insists that the allegations are "convoluted and incomprehensible" to the point that Defendant cannot determine that any support any of the elements of breach of contract and they should be dismissed as conclusory and not plausible on their face.

In the section titled "Fraud," Plaintiffs fail to identify any facts supporting the elements of such a cause of action, i.e., (1) Defendant made a representation to Plaintiffs, (2) the representation was material, (3) the representation was false, (4) Defendant made the representation with knowledge that it was false

or made it recklessly, as a positive assertion without knowledge of
its truth, (5) Defendant made the representation with the intent
that Plaintiffs would act upon it, (6) Plaintiffs relied on the
representation, and (7) the representation caused Plaintiffs
injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W. 3d
768, 774 (Tex. 2009). Instead Plaintiffs spend most of the section
addressing usury law, which does not provide a cause of action for
Plaintiffs because here it is preempted by federal law. 12 U.S.C.
Sec. 1753f-7a.[1]

_____

[1] The Court notes that neither party briefed this question.
It appears JPMC may be correct. Section 1735f-7a provides in
relevant part,

> The provisions of the constitution or the laws of any
> State expressly limiting the rate or amount of interest,
> discount points, finance charges, or other charges which
> may be charged, taken, received, or reserved shall not
> apply to any loan, mortgage, credit sale, or advance
> which is-
>
>> (A) secured by a first lien on residential
>> property . . .;
>>
>> (B) made after March 31, 1980; and
>>
>> (C) described in section 527(b) of the
>> National Housing Act (12 U.S.C. 1735f-5(b) . .
>> . .

Section 501(a)(1) of the Depository Institutions Deregulation and
Monetary Control Act ("DIDMCA"), 12 U.S.C. § 1735f-7a, preempts
state usury laws to the extent that those laws "expressly limit[]
the rate or amount of interest" that a borrower may be charged.
*See, e.g., Wolfert v. Transamerica Home First, Inc.*, 439 F.3d
165,175 (2d Cir. 2006), *citing Brown v. Investors Mortgage Co.*, 121
F.3d 472, 475-76 (9th Cir. 1997); *Smith v. Fidelity Discount Co.*,
898 F.2d 907 (3d Cir. 1990); *In re Lawson Square, Inc.*, 816 F.2d
1236 (8th Cir. 1987). Plaintiffs should investigate the relevance

Plaintiffs' claim of violation of the RESPA is conclusory and is not plausible on its face. Plaintiffs concede that JPMC "responded to all complaint [*sic*]," but complain that JPMC "refused to stop debt collection efforts and foreclosure efforts are researched, addressed, and preferably corrected as required in the plaintiff deed of trust and RESPA.[*sic*]" JPMC objects that RESPA, 24 C.F.R, 3500.21(e), does not require JPMC to stop collection efforts.

Plaintiffs also allege a failure to give "proper written notice of the loan transference from Washington Mutual to Chase as per her contract and section 6 of RESPA," 12 U.S.C. sec. 2605. JPMC argues that RESPA does not require any such notice. Furthermore Plaintiffs' allegations are not factual, but consist only of conclusory statements, and fail to state a claim to relief that is plausible on its face. Thus amendment is futile.

Plaintiffs seem to assert that Defendant violated Housing & Urban Development ("HUD") regulations, 24 C.F.R. §§ 203.605 and 24 C.F.R. 203.606 by their conclusory statement, devoid of facts or identification of the allegedly wrongful conduct: "Defendant has wholly failed to comply with the foregoing Code." Plaintiffs also state that they sought modification of the loan, indicating that JPMC did attempt loss mitigation. The claim is also fatally deficient and amendment is futile, argues JPMC.

---

of this statute to their usury claims before re-pleading.

The only statement under the section titled "Wrongful Foreclosure Proceedings" is "Plaintiff incorporates the foregoing facts and allegations, with the same force and effect, as it fully set forth above and other acts." There is no claim, and amendment is futile, insists JPMC.

Plaintiffs also attempt to assert causes of action for negligence and/or gross negligence, but the allegations are conclusory and lack any legal or factual basis. They fail to specify any recognized legal duty that Defendant breached, and they repetitively assert that Plaintiffs trusted JPMC. Alleged trust does not create a duty.

They also cite Article 16, Section 50(a)(6)(B) of the Texas Constitution and assert that Defendant violated this "statutory provision." Article 16, Section 50(a)(6)(B) of the Texas Constitution has no relevance to the facts of this case and does not create a duty owed to Plaintiffs by JPMC.[2] The allegations are devoid of any legal foundation and any factual basis.

Plaintiffs' second claim for fraud is also fatally deficient because it does not allege any facts nor identify any wrongful conduct by JPMC. It is composed of conclusory statements that loosely track the elements of a claim for fraud. JPMC could not

---

[2] The Court agrees. Tex. Const. art. XVI § 50(a)(6)(B) provides that the maximum amount of a home equity loan is 80% of the fair value of the home less the amount of any other liens which may exist on the home.

-14-

determine from the "incoherent, conclusory allegations any wrongdoing by JPMC."

Nor, argues JPMC, are Plaintiffs entitled to injunctive relief under Texas law.  Under Texas law, a request for injunctive relief without a cause of action supporting entry of a judgment is fatally defective and does not state a claim.  *Butnaru*, 84 S.W. 3d at 210.

In sum because Plaintiffs' motion is untimely and because their proposed amended petition fails to state any cause of action that is plausible on its face, but instead is devoid of factual allegations to support their claims, and is nonsensical and conclusory, amendment is futile and the motion for leave to amend should be denied.

### Court's Ruling

#### *The Proposed Amended Petition*

Despite Defendants' insistence to the contrary, the proposed amended pleading does set forth some facts, though very few.  It states that on or about November 24, 2004, Plaintiffs entered into a written contract with BNC Mortgage Inc. that allowed Plaintiffs to purchase the property at issue.  During 2008 CHF became the mortgager and servicer of the loan.  Plaintiffs state vaguely that after making payments to CHF for several months, they not only incurred increases in the amount of their monthly payments, but also experienced changes in their income and employment status

during the third quarter of 2009.  Around January 2010 they tried to qualify for a HAMP loan modification[3] with CHF.  Shortly afterward, CHF forwarded an Acceleration Warning Letter and Notice to Plaintiffs of its Intent to Foreclose (copy attached as Ex. A).

Plaintiffs then retained an attorney who sent a QWR demanding verification of the Plaintiffs' alleged debt, pursuant to 13 U.S.C. Sec. 2605(e) of RESPA, and requesting a review and evaluation of their payment history, the balances on the debt that Plaintiffs allegedly owed, the interest rate that CHF charged Plaintiffs, and the insurance escrow impounds held or paid, in which Plaintiffs identified some discrepancies from taxes that escalated the monthly note payment from $1,450.00 to $2,200.00. (Copy attached as Exhibit B).  CHF sent a partial response to the QWR, with a payment history of plaintiffs accounts, but none of the other information they had requested.  Plaintiffs' attorney then entered into communications with CHF's Home Lending executive Office between January and March of 2010; he was ultimately directed to the Loss Mitigation Department around March 29, 2010 (copy attached as Exhibit C).  Defendants sent Plaintiffs a Foreclosure Notice, posting their house for foreclosure on Tuesday, April 6, 2010.  Plaintiffs and their attorney claim they did not receive that Notice and that the

---

[3] HAMP, or the Home Affordability Modification Program, is a mortgage assistance program announced by the Department of Treasury on March 4, 2009 that aims to establish an affordable mortgage payment by lowering the interest rate of a loan for those who qualify.

Foreclosure sale was finalized on that date without any notice to Plaintiffs or their attorney.  They received an April 12, 2010 "Notice to Vacate" the property, followed by service on them of an Original Petition for Forcible Detainer by Defendant Wilmington on or about July 22, 1010.  The eviction was heard in Justice Court Precinct Four, Position Two, Harris County, Texas around April 3, 2010, with judgment in favor of Fannie Mae.  Plaintiffs appealed the Eviction with an accelerated trial date of October 18, 2010 (copy of pleadings attached as Exhibit E).  Thus Plaintiffs filed the instant action against Defendants for Defendants' wrongful action.  Plaintiffs assert they are harmed because their homestead is being taken and they will lose all of the money they have invested in the property over approximately six years without having a fair opportunity to protect it and without an adequate remedy at law, so they seek injunctive relief.

The proposed amended pleading states that this action is to stop Defendants from benefitting from the wrongful foreclosure of Plaintiffs' homestead at 10002 Williams Field Drive, Houston, Texas 77064, to  maintain the status quo with Plaintiffs' remaining in the home, which is currently in their possession, to compensate Plaintiffs for emotional distress and economic loss caused by the Defendants' actions, and to punish Defendants CHF (servicer of Plaintiffs' mortgage loan), JPMC (mortgagor), and Wilmington Trust

Company (Trustee of Plaintiffs' home) with punitive damages for their intentional wrongful actions or inactions.

The proposed amended pleading expressly asserts twelve causes of action against Defendants: (1) RESPA; (2) retaliation for making a RESPA complaint; (3) promissory estoppel; (4) breach of contract; (5) breach of good faith and fair dealing; (6) violation of the Texas Constitution; (7) breach of warranty; (8) violations of Texas Finance Code section 302.001; (9) fraud; (10) Housing Urban Development Regulation violation; (11) negligence; and (12) gross negligence.

The Court finds the pleading in the proposed amended petition is substantially deficient and fails to satisfy Rules 8, 12(b)(6), and 9(b), as indicated below.

Regarding the RESPA claim, as best the Court understands the amended pleading, Plaintiffs assert that the RESPA violations include failure to give Plaintiffs written notice before Washington Mutual transferred their loan to Chase; the servicer's failure to respond timely to their QWR, complaining about the amount owed on their debt; the retaliatory actions of Washington Mutual, Chase and Chase Finance Agents and/or Representative; Defendants' wrongful denial of Plaintiffs' HAMP application; wrongful, malicious, intentional foreclosure on Plaintiffs' home with out proper notice to the parties, without allowing the Plaintiffs to exercise their right to make good on the debt and keep their home, and Defendants'

refusal to stop debt collection efforts.  They seek rescission.
These conclusory allegations need to be linked to identified
provisions of RESPA and supported by factual allegations to meet
the standard for a plausible claim if they are to survive.[4]

---

[4] Title 12 U.S.C. sec. 2605, titled "Servicing of mortgage
loans and administration of escrow accounts, provides,

(a) Disclosure to applicant relating to assignment, sale, or
transfer of loan servicing
Each person who makes a federally related mortgage loan shall
disclose to each person who applies for the loan, at the time of
application for the loan, whether the servicing of the loan may be
assigned, sold, or transferred to any other person at any time
while the loan is outstanding.

(b) Notice by transferor of loan servicing at time of transfer
(1) Notice requirement

Each servicer of any federally related mortgage loan shall notify
the borrower in writing of any assignment, sale, or transfer of the
servicing of the loan to any other person.

(2) Time of notice

(A) In general

Except as provided under subparagraphs (B) and (C), the notice
required under paragraph (1) shall be made to the borrower not less
than 15 days before the effective date of transfer of the servicing
of the mortgage loan (with respect to which such notice is made).

(B) Exception for certain proceedings

The notice required under paragraph (1) shall be made to the
borrower not more than 30 days after the effective date of
assignment, sale, or transfer of the servicing of the mortgage loan
(with respect to which such notice is made) in any case in which
the assignment, sale, or transfer of the servicing of the mortgage
loan is preceded by--

(i) termination of the contract for servicing the loan for cause;

(ii) commencement of proceedings for bankruptcy of the servicer; or

(iii) commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

(C) Exception for notice provided at closing

The provisions of subparagraphs (A) and (B) shall not apply to any assignment, sale, or transfer of the servicing of any mortgage loan if the person who makes the loan provides to the borrower, at settlement (with respect to the property for which the mortgage loan is made), written notice under paragraph (3) of such transfer.

(3) Contents of notice

The notice required under paragraph (1) shall include the following information:

(A) The effective date of transfer of the servicing described in such paragraph.

(B) The name, address, and toll-free or collect call telephone number of the transferee servicer.

(C) A toll-free or collect call telephone number for (i) an individual employed by the transferor servicer, or (ii) the department of the transferor servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

(D) The name and toll-free or collect call telephone number for (i) an individual employed by the transferee servicer, or (ii) the department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

(E) The date on which the transferor servicer who is servicing the mortgage loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments.

(F) Any information concerning the effect the transfer may have, if any, on the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance and what action, if any, the borrower must take to maintain coverage.

(G) A statement that the assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or

condition of the security instruments other than terms directly related to the servicing of such loan.

(c) Notice by transferee of loan servicing at time of transfer
(1) Notice requirement

Each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer.

(2) Time of notice

(A) In general

Except as provided in subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not more than 15 days after the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).

(B) Exception for certain proceedings

The notice required under paragraph (1) shall be made to the borrower not more than 30 days after the effective date of assignment, sale, or transfer of the servicing of the mortgage loan (with respect to which such notice is made) in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

(i) termination of the contract for servicing the loan for cause;

(ii) commencement of proceedings for bankruptcy of the servicer; or

(iii) commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

(C) Exception for notice provided at closing

The provisions of subparagraphs (A) and (B) shall not apply to any assignment, sale, or transfer of the servicing of any mortgage loan if the person who makes the loan provides to the borrower, at settlement (with respect to the property for which the mortgage loan is made), written notice under paragraph (3) of such transfer.

(3) Contents of notice

-21-

Any notice required under paragraph (1) shall include the information described in subsection (b)(3) of this section.

(d) Treatment of loan payments during transfer period
During the 60-day period beginning on the effective date of transfer of the servicing of any federally related mortgage loan, a late fee may not be imposed on the borrower with respect to any payment on such loan and no such payment may be treated as late for any other purposes, if the payment is received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date applicable to such payment.

(e) Duty of loan servicer to respond to borrower inquiries
(1) Notice of receipt of inquiry

(A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

-22-

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

(3) Protection of credit rating

During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15).

(f) Damages and costs
Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals

In the case of any action by an individual, an amount equal to the sum of--

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

(2) Class actions

In the case of a class action, an amount equal to the sum of--

(A) any actual damages to each of the borrowers in the class as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not greater than $1,000 for each member of the class, except that the total amount of damages under this subparagraph in any class action may not exceed the lesser of--

(i) $500,000; or

(ii) 1 percent of the net worth of the servicer.

(3) Costs

In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

(4) Nonliability

A transferor or transferee servicer shall not be liable under this subsection for any failure to comply with any requirement under this section if, within 60 days after discovering an error (whether pursuant to a final written examination report or the servicer's own procedures) and before the commencement of an action under this subsection and the receipt of written notice of the error from the borrower, the servicer notifies the person concerned of the error and makes whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an

amount in excess of any amount that the person otherwise would have paid.

(g) Administration of escrow accounts
If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

(h) Preemption of conflicting State laws
Notwithstanding any provision of any law or regulation of any State, a person who makes a federally related mortgage loan or a servicer shall be considered to have complied with the provisions of any such State law or regulation requiring notice to a borrower at the time of application for a loan or transfer of the servicing of a loan if such person or servicer complies with the requirements under this section regarding timing, content, and procedures for notification of the borrower.

(i) Definitions
For purposes of this section:

(1) Effective date of transfer

The term "effective date of transfer" means the date on which the mortgage payment of a borrower is first due to the transferee servicer of a mortgage loan pursuant to the assignment, sale, or transfer of the servicing of the mortgage loan.

(2) Servicer

The term "servicer" means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan). The term does not include--

(A) the Federal Deposit Insurance Corporation or the Resolution Trust Corporation, in connection with assets acquired, assigned, sold, or transferred pursuant to section 1823(c) of this title or as receiver or conservator of an insured depository institution; and

(B) the Government National Mortgage Association, the Federal National Mortgage Association, the Federal Home Loan Mortgage

Corporation, the Resolution Trust Corporation, or the Federal Deposit Insurance Corporation, in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

(i) termination of the contract for servicing the loan for cause;

(ii) commencement of proceedings for bankruptcy of the servicer; or

(iii) commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

(3) Servicing

The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

(j) Transition
(1) Originator liability

A person who makes a federally related mortgage loan shall not be liable to a borrower because of a failure of such person to comply with subsection (a) of this section with respect to an application for a loan made by the borrower before the regulations referred to in paragraph (3) take effect.

(2) Servicer liability

A servicer of a federally related mortgage loan shall not be liable to a borrower because of a failure of the servicer to perform any duty under subsection (b), (c), (d), or (e) of this section that arises before the regulations referred to in paragraph (3) take effect.

(3) Regulations and effective date

The Secretary shall, by regulations that shall take effect not later than April 20, 1991, establish any requirements necessary to carry out this section. Such regulations shall include the model disclosure statement required under subsection (a)(2) of this

-26-

The Court has found no cognizable retaliation claim under RESPA under the facts alleged in the complaint nor in this context, since this suit was filed long after the foreclosure and Plaintiffs have made no allegations to explain their conclusory claim of retaliation.

To state a claim for promissory estoppel a plaintiff must plead (a) a promise, (b) foreseeability of reliance by the promisor, (c) substantial and reasonable reliance by the promisee to its detriment, and (d) enforcement of the promise is necessary to avoid injustice. *Sipog Servs. Marine v. Wyatt Field Serv. Co.*, 857 S.W. 2d 602, 605 (Tex. App.--Houston [1ˢᵗ Dist.] 1993, no writ). To show detrimental reliance, a plaintiff must show that he materially changed his position in reliance on the promise. *English v. Fischer*, 660 S.W. 2d 521, 524 (Tex. 1983). Promissory estoppel does not apply to a promise covered by a valid contract between the parties, but it does apply to a promise outside of the contract. *Richter v. Wagner Oil Co.*, 90 S.W. 3d 890, 899 (Tex. App.--San Antonio 2002, no pet.). Plaintiffs' pleading of this claim, which overlaps others, is vague, unclear, and void of specifics and factual support. As best the Court understands the proposed petition, Washington Mutual originally made a promise to Plaintiffs of an interest rate below ten percent, which was

---

section.

incorporated into the Deed of Trust, as were Plaintiffs'[undefined] contractual agreements and promissory note, which Washington Mutual assigned or transferred or sold to Chase and Chase Finance, which are therefore obligated to comply with these obligations. Plaintiffs further allege that they justifiably relied on the promise of Chase and Chase Finance to arrange for a HAMP modification package to protect their homestead and that injustice can only be avoided by enforcing their promises.   Moreover Plaintiffs also assert they submitted written complaints to the Finance Company and Chase, which willingly and intentionally refused to adhere to the [unidentified] terms of the contract under RESPA and the Deed of Trust.   Defendants allegedly breached their obligation to the Plaintiffs by not adhering to the terms of their contract to stop all debt collection efforts and foreclosure until Plaintiffs' complaints challenging the debt and the HAMP modification.   It appears that these allegations would fall within (were incorporated into) at least one contract between some parties, and if so, a promissory estoppel claim would not be cognizable.   Plaintiffs need to plead specifically what promises are in the contractual agreements and incorporated into the Deed of Trust.   To sustain a promissory estoppel claim, they must indicate which promises are outside any contract between the parties, as well as show how and why these promises were reasonably relied upon by Plaintiffs, and how Plaintiffs were injured thereby.

-28-

Plaintiffs' breach of contract claims are similarly vague.  To state a claim for an enforceable contract, a plaintiff must allege (1) an offer, (2) acceptance of the offer, (3) mutual assent or "meeting of the minds" about the subject matter and the essential terms of the contract, and (4) consideration or mutuality of obligations.  *Baylor Univ. v. Sonnichsen*, 221 S.W. 3d 632, 635 (Tex. 2007).   Whether the parties have formed a contract is determined by the objective standard of what the parties said and how they acted, not by their subjective state of mind.  *Texas Disposal Systems Landfill, Inc. v. Waste Management Holdings, Inc.*, 219 S.W. 3d 563, 589 (Tex. App.--Austin 2007); *Fiess v. State Farm Lloyds*, 202 S.W. 3d 744, 746 (Tex. 2006)("[T]he parties' intent is governed by what they said, not by what they *intended* to say but did not [emphasis in the original]).").   Plaintiffs also allege that Defendants are in breach of their contractual agreement with the Plaintiffs by not complying with RESPA Servicing of the Plaintiffs' loan and loan modification, as outlined in the Deed of Trust in accordance with the State of Texas Constitution.   Chase breached promises to service and process Plaintiffs' Application for a HAMP modification, to respond to Plaintiffs' questions on the accounting of all payments received on Plaintiffs' account and of insurance payments on their account, and the offsetting of ad valorem payments to Plaintiffs account, and to correct complaints where applicable.   Plaintiffs fail to specify what parties entered

-29-

into what contracts, whether they were valid contracts, what the key terms of each were, and what and how they were breached.  They fail to provide the loan documents that were breached and to indicate which provisions were breached.  *See, e.g., Chapa v. Chase Home Finance LLV*, Civ. A. No. C-10-358, 2010 WL 5186785, *5 (S.D. Tex. Dec. 15, 2010), *citing Smith v. Nat'l City Mortg.*, 2010 U.S. Dist. LEXIS 86221 at *33-34 (W.D. Tex. Aug. 23, 2010)(dismissing breach of contract claim in 12(b)(6) motion where plaintiffs did not specify what provision or for that matter what contract was allegedly breached), *citing Mae v. U.S. Property Solutions,* 2009 U.S. Dist. LEXIS 36126, 2009 WL 1172711, at *2 (S.D. Tex. Apr. 28, 2009)(dismissing breach of contract claim where property owner failed to assert which provision of the loan was allegedly breached); and *L.L.C., Powell v, Residential Mortg. Capital*, 2010 U.S. Dist. LEXIS 59698, 2010 WL 2133011 at *7 (N.D. Cal. May 24, 2010)(holding that plaintiff's allegation that "Defendants promised to provide Plaintiff with an affordable loan" was vague, did not allege where such a promise was memorialized or what consideration was given for such a promise, and thus failed to show the existence of a contract).

The Court agrees with Defendants that Plaintiffs' fourth claim for breach of good faith and fair dealing is not cognizable in the context of mortgager and mortgagee.  "A claim for a breach of duty of good faith and fair dealing is a tort action that arises from an

underlying contract." *Cole v. Hall*, 864 S.W. 2d 563, 568 (Tex. App.–Dallas 1993, writ dism'd). Initially whether such a duty exists is a question of law for the court. *Id.* It does not exist in all contractual relationships. Chapa, 2010 WL 5186785, *6; *Great Am. Ins. Co. V. North Austin Mun. Util. Dist. Nol 1*, 908 S.W. 2d 415, 418 (Tex. 1995); *English,* 660 S.W. 2d at 522. The duty of good faith and fair dealing is imposed only where there is a "'*special relationship* of trust and confidence' between the parties, marked by shared trust or an imbalance in bargaining power.'" *Chapa*, 2010 WL 5186785, *6, *citing Smith v. Nat'l City Mortg.*, 2010 U.S. Dist. LEXIS 86221, *36 (W.D. Tex. Aug. 23, 2010), *quoting Federal Deposit Ins. Corp. V. Coleman*, 795 S.W. 2d 706, 708-09 (Tex. 1990). "'The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith.'" *Chapa*, 2010 WL 5186785, *6, *quoting Coleman*, 795 S.W. 2d at 7-9. Nor does the relationship between a creditor and a guarantor, or between a lender and a borrower, support a duty of good faith. *Id.; Cole*, 802 S.W. 2d at 399. Plaintiffs have not alleged any facts that would demonstrate a special relationship with Defendants that would give rise to a duty of good faith here.

Plaintiff's bare-bones, conclusory claim that Defendants violated the Texas Constitution fails to meet the standard for a plausible claim under Rule 12(b)(6). It may be related to Plaintiffs' usury charge under the Texas Finance Code sec. 32.001,

discussed *infra*.  Contracts for usurious interest are prohibited by the Texas Constitution, article XVI, section 11 and the Texas Finance Code Annotated section 302.09(b).  *Sturm v. Muens*, 224 S.W. 3d 758, 761 (Tex. App.–-Houston [14th Dist.] 2007).  Nevertheless Plaintiffs must address the preemption issue under the DIDMCA identified in footnote 1 of this opinion and order.

Plaintiffs' conclusory assertion that Defendants breached warranties is similarly bare of any facts.

Relating to Plaintiffs' claims of fraud and violations of the Texas Finance Code sec. 202.001, and without satisfying the elements for a valid contract set out by the Court *supra*, Plaintiffs assert that Washington Mutual made a gratuitous promise to Plaintiffs and "misrepresented to Plaintiffs in the truth and lending statement, that Plaintiffs' interest rate would be below ten percent, but the interest on the loan of money or extension of credit for which Plaintiffs contracted with Chase was in excess of ten percent, in violation of Texas' usury laws.  Tex. Finance Code sec. 302.001. They also claim that Chase and Chase Finance should be required to comply with the same promise and should correct the Deed of Trust and the Promissory Note.  At the same time Plaintiffs state, "The Promissory Note permits imposition of usurious interest, and hence that Chase illegally contracted for the right to charge usurious interest."  Not only must Plaintiff consider the preemption issue under the DIDMCA, but to allege common law fraud,

Plaintiffs must plead with factual particularity under Rule 9(b), but have not, that (1) a material representation was made, (2) that the representation was false, when the representation was made, (3) the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) that the speaker made the misrepresentation with the intent that the other party should act upon it, (5) the party acted in reliance on the misrepresentation, and (6) the party thereby suffered injury. *In re Firstmerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Plaintiff must plead the "who, what, when, and where" of the allegedly fraudulent misrepresentation or conduct.

Plaintiffs' claim for breach of HUD regulations, citing 24 C.F.R. section 203.605 ("Loss Mitigation Performance"), 203.501 ("Loss Mitigation"), 203.606 ("Pre-foreclosure review"), asserts that Chase and Chase Finance failed to conduct a Loss Mitigation Evaluation and did not provide Plaintiffs with the required thirty-day notice before any foreclosure proceedings in violation of HUD regulations.  The Court notes that a number of courts have held that there is no private cause of action for violation of HUD regulations. *See, e.g., Wells Fargo Home Mortgage, Inc. V. Neal*, 922 A.2d 538, 543-44 (Md. 2007)(citing authority across the country rejecting argument that a violation of the HUD regulations creates a private cause of action); *Baker v. Countrywide Home Loans, Inc.*, 3:08-CV-0916-B, 2009 WL 1810336, *3 (N.D. Tex. June 24,

-33-

2009)("Because the aim of the [Federal Housing Act] and the HUD regulations is to govern the relationship between mortgagees and the government, courts have recognized that violations of such provisions fail to give rise to a private cause of action" for wrongful foreclosure.)(and cases cited therein).  An exception has been recognized where the HUD regulations are incorporated into a contract between mortgagee and the government so that it permits a basis for a breach of contract claim).  *Baker*, 2009 WL 1810336 at *5 (A "failure to comply with regulations made part of the parties' agreement may give rise to liability on a contract theory because the parties incorporated the terms into their contract.  Indeed, courts have recognized that claims for failure to comply with HUD regulations . . . are best classified as a breach of contract."), *citing Buis v. Wells Fargo Bank, N.A.*, 401 F. Supp. 2d 612, 616 (N.D. Tex. 2005)..  Plaintiffs have conclusorily asserted that paragraph 9(d) of the Deed of Trust incorporates the rules and regulations of the Secretary of HUD, but have not indicated which ones and have not provided a copy of that document.  Nor have they provided factual support for their bare-bones allegation that the three cited HUD regulations were violated by Defendants; indeed, a pointed out by JPMC they seem to contradict that allegation.

    For their negligence claim, Plaintiffs must allege (1) the existence of a legal duty, breach of that duty, and damages proximately caused by the breach.  *Van Horn v. Chambers*, 970 S.W.

2d 541, 544 (Tex. 1998).  Without citing any authority, Plaintiffs claim they "placed their trust and goodwill into the hands" of Chase and trusted that Chase "had a duty to Plaintiffs of modifications services, protecting Plaintiffs home managing Plaintiffs escrow account and loan account [*sic*]" and assert it breached that duty.  Moreover Plaintiffs call it a "fiduciary" duty.  As noted, the relationship of a mortgagor and a mortgagee does not give rise to a duty of good faith and fair dealing, no less a fiduciary duty.  *Coleman*, 705 S.W.2d 706; *White v. Mellon Mortg. Co.*, 995 S.W. 2d 795, 800 (Tex. App.--Tyler 1999, no pet.); *In re Thrash*, 433 B.R. 585, 597 (Bkrtcy. N.D. Tex. 2010).  Texas does not recognize a fiduciary duty owed by a lender to a borrower.  *Williams v. Countrywide*, 504 F. Supp. 2d 176, 192 (S.D. Tex. 2007); *Esty v. Beal Bank, S.S.B.*, 298 S.W. 3d 280, 304 (Tex. App.--Dallas 1009, no pet.).  The Texas Supreme Court has held that a duty of good faith is imposed in a contract where there is a "special relationship" characterized "by shared trust or an imbalance in bargaining power."  *Coleman*, 795 S.W. 2d at 708-09.  But Texas courts have held that such a "special relationship" does not apply to the relationship between a mortgagor and mortgagee.  *See, e.g., Lovell v. Western Nat'l Life Ins. Co.*, 754 S.W. 2d 298, 303 (Tex. App.--Amarillo 1988, writ denied); *Collier v. Wells Fargo Home Mortg.*, No, 7:04-CV-K, 2006 WL 1464170, *8 (N.D. Tex. May 26, 2006)(and cases cited therein).  Nor is there any duty to act

reasonably toward other people generally.  *Thrash*, 433 B.R. at 597,
*citing THPD, Inc. v. Cont'l Imps., Inc.*, 260 S.W. 3d 593, 616 (Tex.
App.--Austin 2008, no pet.).  Nor, as Plaintiffs assert, does Chase
have a recognized "duty to Plaintiffs of modification services,
protecting Plaintiffs['] home."  As the *Thrash* bankruptcy court
opined, 433 B.R. at 596*,*

> [T]here is little guiding authority to enlighten this
> court as to whether there is a recognized duty to conform
> to a certain standard of conduct that might:  (a) be owed
> from a mortgage lender or servicer to its borrower; and
> (b) give rise to a negligence claim.  Negligence has been
> defined as a failure to use ordinary or due care; that
> is, failing to act as a person of ordinary prudence would
> have acted under the same or similar circumstances.  *Webb
> v. Glenbrook Owners Ass'n, Inc.*, 298 S.W. 3d 374, 388 n.6
> (Tex. app.-Dallas 2009, no pet.).  But there must be a
> legally cognizable duty recognized (by statute or common
> law) before actions should be analyzed under the
> reasonably prudent person test.

As a matter of law, Plaintiffs have not identified a legally
cognizable duty owed by Defendants to Plaintiffs under the law, nor
shown with supporting facts a breach of that duty and damages
caused by the breach in their dispute.  Thus they have failed to
state a negligence claim.[5]

---

[5] Plaintiffs have failed to distinguish their negligence
claims from their breach of contract claims.  This Court would
point out that

> where there is a contract between the parties, the duty
> must arise independently of the fact that a contract
> exists between the parties (*i.e.*, there must be an
> independent obligation/duty imposed by law).  *Am. Nat'l
> Ins. Co. v. IBM Corp.*, 933 S.W. 2d 685, 686 (Tex. App.--
> San Antonio 1996, writ denied).  In other words, a
> contractual relationship between parties may create

Under Texas law, gross negligence is a heightened form of negligence requiring a plaintiff to allege and ultimately prove (1) an act or omission that, viewed objectively from the actor's standpoint, involved "'an extreme degree of risk'" and (2) the actor had actual, subjective awareness of the risk and proceeded anyway with a "conscious indifference." *Thrash*, 433 B.R. at 600. *citing Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008), and *Guzman v. Inter Nat'l Bank*, No. 13-07-00008-CV, 2008 WL 739828, &3-4 (Tex. App.--Corpus Christi Mar. 20, 2008, no pet.)(lender's actions/non-disclosures that ultimately allegedly resulted in foreclosure on the plaintiff's house did not give rise to a gross negligence claim). If a plaintiff fails to allege a negligence claim giving rise to actual damages, he cannot maintain a gross negligence claim for punitive damages. *Nowzaradan v. Ryans*, ___ S.W. 3d ____, No. 14-10-00801, 2010 WL 3418308, *4 (Tex. App.--Houston [14[th] Dist.] May 26, 2011), *citing Newman v. Tropical*

---

duties under **both** contract and tort law. *Jim Walter Homes, Inc. v. Reed*, 711 S.W. 2d 617, 618 (Tex. 1986)(the "nature of the injury" most often determines whether a contract duty or duty-imposed-by-law is breached; when "the injury is only the economic loss to the subject of a contract itself, it sounds in contract alone"). A plaintiff carries the burden of proving the existence and violation of an independent obligation imposed by law. *Am. Nat'l Ins. Co.*, 933 S.W. 2d at 686; *Ranger Conveying & Supply Co. v. Davis*, 254 S.W. 3d 471 (Tex. App.--Houston [1[st] Dist.] 2007, pet. denied).

*Thrash*, 433 B.R. at 596.

*Visions, Inc.*, 891 S.W. 2d 713, 721 (Tex. App.--San Antonio 1994, writ denied).

As a final matter, Plaintiffs are claiming wrongful foreclosure even though that cause of action is not listed among the twelve causes of action discussed previously. Under Texas law, to state a claim for wrongful foreclosure a plaintiff must allege (1) a defect in the foreclosure sale proceedings, (2) a grossly inadequate selling price, and (3) a causal connection between the defect and the grossly inadequate selling price. *Sauceda*, 268 S.W. 3d at 139. As defects Plaintiffs here claim they did not receive notice of the foreclosure and that Defendants foreclosed on their home on April 6, 2010 without allowing them to exercise their right to make good on the debt and keep it and failure to conduct a loss mitigation analysis. It is unclear from the amended petition whether Plaintiffs are still in possession of their home or whether they have been evicted following appeal of the forcible detainer judgment in favor of Fannie Mae. In *Baker v. Countrywide Home Loans, Inc.*, No. 3:08-CV-0916-B, 2009 WL 1810336, *4 (N.D. Tex. June 24, 2009), the court recognized that the measure of damages for wrongful foreclosure is lost equity (i.e., the difference between the value of the property at the date of foreclosure and the remaining balance due on the indebtedness), which is based on "a tort theory of recovery to compensate the aggrieved for his lost possession of the property." Therefore, "[b]ecause recovery is

premised upon one's lack of possession of real property, individuals never losing possession of the property cannot recover on a theory of wrongful foreclosure. As such, courts in Texas do not recognize an action for attempted wrongful foreclosure." *Id. See also, e.g., Sander v. Citimortgage, Inc.*, Civ. A. No. 4:09CV566, *2 (E.D. Tex. Mar. 24, 2001)("Recovery [for wrongful foreclosure] is premised upon loss of possession of real property, and individuals never losing possession of that property cannot recover on a theory of wrongful foreclosure."); *Smith v. J.P. Morgan Chase Bank N/A,* Civ. A. No. H-10-3730, 2010 WL 4622209, *2 (S.D. Tex. Nov. 4, 2010)("Under Texas law, even if a mortgage holder wrongfully attempts foreclosure, there is no claim for wrongful foreclosure if the mortgagor does not lose possession of the home"; "[b]ecause recovery is based on the lack of possession of real property, individuals never losing possession cannot recover on a theory of wrongful foreclosure."); *Peterson v. Black*, 980 S.W. 2d 818, 823 (Tex. App.--San Antonio 1998)("Recovery for wrongful foreclosure is conditioned on the disturbance of the mortgagor's possession based on the theory that the mortgagee has committed a wrong similar to the conversion of personal property."). Thus Plaintiffs need to clarify their status to determine if they can assert a claim for wrongful foreclosure.

After reviewing Plaintiffs' Amended Petition (#7-1), for reasons indicated above, the Court agrees with JPMC that the

proposed pleading does not satisfy the requirements of Rules 8, 9(b) and 12(b)(6).  Nevertheless, the Court finds that JPMC has failed to show that amendment is necessarily futile except as to Plaintiffs' claims for breach of duty of good faith and fair dealing, which is not cognizable in the relationship between the parties here, promissory estoppel if the alleged promise also falls under a contract, and retaliation under RESPA.  Thus the Court will permit Plaintiffs one more opportunity to state a claim that satisfies the standards of Rules 8, 12(b)(6), and 9(b) in accord with the Court's discussion here. Therefore the Court

ORDERS that CHF's (and now JPMC's) motion for more definite statement (#4) and Plaintiffs' motion for leave to amend (#7) are GRANTED, although the Court also

ORDERS that the proposed Amended Petition (#7-1) is STRICKEN. Plaintiffs shall file an Amended Complaint within three weeks of entry of this order.  Defendants' current motion to dismiss (#4) is MOOT.

**SIGNED** at Houston, Texas, this __28th__ day of __June__, 2011.

_____

MELINDA HARMON
UNITED STATES DISTRICT JUDGE