IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LAWRENCE MOTTON AND DONNA EVANS,§
                                §
            Plaintiffs,         §
                                §
VS.                             §      CIVIL ACTION H-10-4994
                                §
CHASE HOME FINANCE AND          §
WILMINGTON TRUST COMPANY, et al.§
                                §
            Defendants.         §

**OPINION AND ORDER OF DISMISSAL**

Pending before the Court in the above referenced cause, removed from state court and alleging wrongful foreclosure, breach of contract, and intentional infliction of emotional distress, are Defendant JPMorgan Chase Bank, N.A.'s ("Chase's")[1] motion to dismiss for failure to state a claim (instrument #25), filed on September 22, 2011, and motion for summary judgment (#39).

After carefully reviewing the record and the applicable law, the Court concludes, for reasons stated below, that the motion to dismiss for failure to state a claim should be granted with prejudice.

Plaintiffs Lawrence Motton and Donna Evans were notified by the Court (#38) on April 26, 2012 that they are now proceeding *pro se* and that the deadline for responding to the long pending motion to dismiss was May 21, 2012.  Chase then filed its motion for

_____

[1] JPMorgan Chase Bank, N.A. is successor by merger to Chase Home Finance, LLC.

summary judgment on April 30, 2012.  Plaintiffs have failed to respond to either motion or to move for an extension of time or leave to amend.  Because of earlier problems with Plaintiffs' representation by counsel, the parties have not participated in discovery.  Therefore the Court chooses to deny without prejudice as premature the motion for summary judgment and addresses the motion to dismiss for failure to state a claim.  Nevertheless, because copies of the two documents central to this suit (the Note and the Deed of Trust) are attached to the motion for summary judgment (Exhibits A-1 and A-2), and are more conveniently accessed than through the state court records attached to the Notice of Removal (#1), the Court cites to these summary judgment exhibits.

### Procedural History

This case was removed by Chase from state court on diversity jurisdiction on December 15, 2010, before the other named Defendant, Wilmington Trust Company, had been served.  Chase then filed its first motion to dismiss for failure to state a claim or, alternatively, motion for more definite statement (#4).  Plaintiffs moved for leave to amend (#7), with a copy of their proposed amended complaint attached.  In Plaintiffs' response (#8) to the motion to dismiss, they stated that their proposed amended complaint would moot the issue.  In a reply (#11), Chase complained that (1) Plaintiffs's motion was untimely by months, (2) Plaintiffs had cited the wrong pleading standard for stating a claim, (3) as

a matter of law Plaintiffs could not assert claims (a) for breach of good faith and fair dealing because the parties' relationship was that of mortgagor and mortgagee and (b) for promissory estoppel because of the existence of the mortgage contract, and (4) that the proposed complaint failed to state plausible claims for breach of contract, fraud, violation of the Real Estate Settlement Procedures Act ("RESPA"), violation of Housing & Urban Development ("HUD") regulations, negligence and/or gross negligence because it was devoid of supporting factual allegations.  On June 28, 2011 this Court issued a lengthy Opinion and Order (#12), granting Chase's earlier motion for a more definite statement, striking the proposed amended complaint, setting out in detail the correct standards for pleading under Federal Rules of Civil Procedure 8, 12(b)(6), and 9(b), finding the proposed pleading "substantially deficient" in facts and thus failing to state plausible claims, and pointing out what Plaintiffs needed to address for each of their claims.  It ruled that amendment of the claims for breach of duty of good faith and fair dealing, promissory estoppel and retaliation under RESPA would be futile, but granted Plaintiffs leave to amend their other causes of action by July 19, 2011.

On September 8, 2011, after making several requests for extension of time, Plaintiffs untimely filed the now controlling pleading, their First Amended Complaint (#22), currently challenged by Chase's second motion to dismiss for failure to state a claim

(#25).  The new complaint adds a defendant, "Mortgage Electronic Registration Systems, Inc. ("MERS"), but there is no indication in the record that Plaintiffs have met their obligation under Rule 4(c)(1) to have MERS served within the requisite 120 days (Rule 4(m)) or that MERS voluntarily made an appearance in this action. Nor is there evidence in the record that Wilmington has ever been served or made an appearance.  Thus the Court lacks jurisdiction over them.

For relevant standards of review, the elements of Plaintiffs' various causes of action, and the Court's rulings thus far, the Court hereby refers the parties to, and incorporates into this document, its Opinion and Order of June 28, 2011 (#12).

**Chase's Motion to Dismiss For Failure to State a Claim (#25)**

Chase charges that Plaintiffs' First Amended Complaint, which includes a statement incorporating their previous petition and proposed amended complaint and exhibits (despite the Court's rulings in #12), is also devoid of factual allegations supporting their specific causes of action and thus fails to state plausible claims.  Thus it fails to satisfy Rules 8 and 12(b)(6) and should be dismissed in its entirety.

Chase insists that Plaintiffs conclusorily claim the foreclosure was wrongful but fail to plead facts to support the essential elements of a wrongful foreclosure cause of action:  (1) a defect in the foreclosure sale proceedings, (2) a grossly

inadequate selling price, and (3) a causal connection between the two. *Charter Nat'l Bank--Houston v. Stevens*, 781 S.W. 2d 368, 371 (Tex. App.--Houston [14th Dist.] 1989, writ denied).  A wrongful foreclosure requires a plaintiff to plead and ultimately prove an irregularity that "must have caused or contributed to cause the property to be sold for a grossly inadequate price." *In re Keener*, 268 B.R. 912, 921 (N.D. Tex. 2001).  Chase argues that Plaintiffs' conclusory complaint fails to state a defect that occurred in the foreclosure sale proceedings, fails to plead how the selling price at foreclosure was grossly inadequate, and alleges no facts showing the requisite causal connection between the two.  This Court agrees as to the latter two points, but questions the first.[2]

Furthermore Chase points out that both Plaintiffs' Original Petition and subsequent proposed amended complaint state that Defendant had sent a notice of foreclosure sale to Plaintiffs indicating that the sale was to occur on April 6, 2010, and the sale was held on that date.  #1-1, IV ¶9; #7-1 ¶8.  Chase also observes that Plaintiffs' have ignored the Court's direction (#12)

---

[2] *See, e.g., Tamplen v. Bryeans*, 640 S.W. 2d 421 (Tex. App.-- Waco 1982, writ ref'd n.r.e.)(Failure to provide notice under Texas Property Code § 51,002 constituted an actionable defect in the foreclosure sale).  But the court in *Tamplen* found that because Plaintiffs failed to allege a grossly inadequate selling price at the foreclosure sale and a causal connection between the alleged defect and the inadequate selling price, they failed to state a claim.  *In accord Strange v. Flagstar Bank*, FSB, Civ. A. No. 3:11- CV-2642-B, 2012 WL 987584. *4 (N.D. Tex. Mar. 22. 2012).

"to clarify their status to determine if they can assert a claim for wrongful foreclosure."

Chase concludes that thus the wrongful foreclosure cause of action should be dismissed.

The Court agrees that dismissal of the claim is appropriate. Even if Plaintiffs' conclusory allegation that they never received a notice of foreclosure did constitute a defect in the foreclosure, they have failed to allege facts supporting the last two elements, i.e., that the property was sold for a grossly inadequate amount and that the defect caused that inadequate price.

To state a claim for breach of contract, Plaintiffs must show (1) the existence of a valid contract; (2) performance by Plaintiffs; (3) breach by Defendant(s); and (4) damages resulting from the breach. *Academy of Skills & Knowledge, Inc. v. Charter Schools, USA, Inc.*, 260 S.W. 3d 529, 536 (Tex. App.--Tyler 2008, pet. denied). Chase observes that Plaintiffs initially claim there is no contract, then that there is a contract and that Defendants breached it in several ways, i.e., by violating (1) Paragraph 6(C) of the Note[3] (#39, Ex. A-1); (2) Paragraph 7 of the Note[4] (*id.*); (3)

---

[3] Paragraph 6(C), relating to "BORROWER'S FAILURE TO PAY AS REQUIRED," is titled "Notice of Default" and provides,

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on

Paragraph 19 of the Deed of Trust[5] (#39, Ex. A-2); (4) Paragraph 22

---

which the notice is mailed to me or delivered by other
means.

Plaintiffs allege that "Defendants mailed a notice of default to
plaintiffs, however the defendant notice did not contain the **DATE**
the overdue amount must be paid. [*sic*]  The letter only contained
the **number of days,** which by case law is not acceptable."  #22 at
p. 10, ¶ 42.a.i.

[4] Paragraph 7, entitled "GIVING OF NOTICES," provides,

Unless applicable law requires a different method,
any notice that must be given to me under this Note will
be given by delivering it or by mailing it by first class
mail to me at the Property Address above or at a
different address if I give the Note Holder a notice of
my different address.
Any notice that must be given to the Note Holder under
this Note will be given by delivering it or by mailing it
by first class mail to the Note Holder at the address
stated in Section 3(A) above or at a different address if
I am given a notice  of that different address. [*sic*]

Plaintiffs allege, "The Defendant [not identified] received the
certified letter to vacate from the defendants Wilmington's
attorney.  However the plaintiffs address did not receive notice of
the foreclosure from any of the defendants. [*sic*]"  #22 at p. 10,
42.a.ii.1.

[5] Paragraph 19, "Borrower's Right to Reinstate After
Acceleration," states,

If Borrower meets certain conditions, Borrower shall have
the right to have enforcement of this Security Instrument
discontinued at any time prior to the earliest of: (a)
five days before sale of the Property pursuant to any
power of sale contained in this Security Instrument; (b)
such other period as Applicable Law might specify for the
termination of Borrower's right to reinstate; or (c)
entry of judgment enforcing this Security Instrument.
Those conditions are that Borrower: (a) pays Lender all
sums which then would be due under this Security
Instrument and the Note as if no acceleration had
occurred; (b) cures any default of any other covenants or
agreements; (c) pays all expenses incurred in enforcing

of the Deed of Trust[6] (#39, Ex. A-2); (5) RESPA; and (6) HUD

---

this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such actions as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.   Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an Institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.   Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.   However, this right to reinstate shall not apply in the case of acceleration under Section 18.

The First Amended Complaint does not make an allegation about this provision.

[6] Paragraph 22 reads,

Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify:  (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property.   This notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If default is not cured on or before the date specified

-8-

in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provide in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purpose of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law.  Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law.  Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month.  Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender of its designee may purchase the property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower.  Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order:  (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale.  If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

regulations.

Regarding the first breach of the Note's ¶ 6(C), Chase contends that the Note and Notice of Default speak for themselves. The Notice of Default, sent to Lawrence Motton at the address of the Property to be foreclosed upon, copy attached to the amended Complaint (Ex. A), expressly states that the default must be cured within 32 days of January 4, 2010.  The Notice of Default complies with the terms of the Note.  Plaintiffs also do not state which defendant(s) allegedly breached this provision.  About the second breach of the Note's ¶ 7, Plaintiffs do not identify which defendant violated it or which defendant was obligated to comply with it.  Plaintiffs' statement that "plaintiffs [*sic*] address did not receive notice of the foreclosure sale from any of the defendants," Chase points to statements in previous pleadings acknowledging that notice of the foreclosure sale was sent.  #1-1,IV ¶ 9; #7-1, ¶ 8.  As to ¶ 19 of the Deed of Trust, Plaintiffs do not specify any breach, nor do they allege that they complied with its conditions.  The same is true regarding ¶ 22 of the Deed of Trust.

This Court agrees.  It further finds that Plaintiffs' claim that they did not **receive** notice of default fails to state a claim because it does not show that Chase failed to comply with the

---

The new pleading fails to specify which defendant breached ¶22 and how.

statutory requirement under Texas Property Code section 51.002(d) and under the Deed of Trust, to **serve** notice.  Plaintiffs have not alleged that Chase did not serve notice pursuant to the statute by certified mail; instead they have conceded that notice was sent. Under section 51.002(e), "Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address."  There is no requirement that the debtor have actually received it.  *See, e.g. Gillespie v. BAC Home Loans Servicing, LP*, No. 4:11-CV-388-A, 2012 WL 1870923, *5 (N.D. Tex. May 23, 2012).

Chase also contends that Plaintiffs' allegations of violations RESPA and of HUD regulations are fatally deficient.  Chase points out that the Note and Deed of Trust do not incorporate either RESPA or the HUD regulations.  The case Plaintiffs cite, *Baker v. Countrywide Home Loans, Inc.*, 3:08-CV-0916-B, 2008 WL 1810336 (N.D. Tex. June 24, 2009), is clearly distinguishable from the instant suit because in *Baker* the court found the Note and Deed of Trust each contained an express specific provision incorporating HUD regulations.  *Id.* at *2 & n.2.[7]  Because neither the Note nor the

---

[7] Moreover this Court observes that the Honorable Jane Bland continued, *id.*,

It is well established that the [HUD] regulations at issue "deal only with the relations between the mortgagee . . . and the government, and give the mortgagor . . . no claim to duty owed nor remedy for failure to follow." .

Deed of Trust expressly incorporates RESPA or the HUD regulations here, violations of RESPA and HUD regulations cannot serve as the basis for a breach of contract claim.

Finally, Plaintiffs assert a claim for intentional infliction of emotional distress, a cause of action which Texas courts construe as a "gap-filler" available only when a person intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress. *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W. 3d 438, 447 (Tex. 2003). Chase argues that Plaintiffs' complaint, itself, indicates that it is not the only available remedy at law for them, nor have they stated that it is their only available remedy. Furthermore, the First Amended Complaint fails to allege facts that suggest conduct which is extreme and outrageous. *See Tiller v. McLure*, 121 S.W. 3d 709, 713 (Tex. 2003); *A.H. Belo Corp. v. Corcoran*, 52 S.W. 3d 375, 383 (Tex. App.--Houston [1st Dist.] 2001, pet. denied).

_____

. . . Because the aim of the FHA and the HUD regulations is to govern the relationship between mortgagees and the government, courts have recognized that violations of such provisions fail to give rise to a private cause of action. . . . For this reason, plaintiffs cannot sustain a cause of action for wrongful acceleration and foreclosure solely on the basis that the FHA and HUD regulations were not complied with. [citations omitted]

*Id.* at *3, *citing inter alia Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360 (5th Cir. 1977)("We agree that application of the *Cort* analysis [the National Housing Act and HUD's Handbook] results in the rejection of a private cause of action."). *In accord, Cavil v. Trendmaker Homes, Inc.*, Civ. A. No. G-10-304, 2010 WL 5464238, *5 (S.D. Tex. Dec. 29, 2010).

This Court agrees that the claim for intentional infliction of emotional distress should be dismissed.  To state such a claim under Texas law, a plaintiff must allege with supporting facts that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe.  *Hoffman-La Roche*, 144 S.W. 3d at 445.  Liability can only be imposed when the defendant's conduct was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community,'" *Twyman v. Twyman*, 855 S.W. 2d 619, 621 (Tex. 1993), *quoting Restatement (Second) of Torts* § 46, cmt. d (1965); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 218 (5th Cir. 1995).  It is for the court to determine in the first instance whether the defendant's conduct may reasonable be regarded as so extreme and outrageous as to allow recovery.  *Brewerton v. Dalrymple*, 997 S.W. 2d 212, 215-16 (Tex. 1999), *citing Wornick Co. v. Casas*, 856 S.W. 2d 732, 734 (Tex. 1993), and *Restatement (Second) of Torts* § 46 cmt. h (1965).  This Court finds that Plaintiffs' all-too-vague RESPA allegations of failure to receive adequate notice of foreclosure from Defendants or notice of a transfer of Plaintiffs' Note or failure to manage their account accurately will not establish a claim for intentional   infliction of emotional

distress.  Moreover, because this RESPA cause of action is based on Plaintiffs' claim for wrongful foreclosure, and because Plaintiffs have failed to adequately plead a claim for wrongful foreclosure, that failure is also a basis for dismissing the claim for intentional infliction of emotional distress.

Accordingly, for the reasons stated above, the Court

ORDERS that Chase's motion for failure to state a claim (#25) is GRANTED.  Because Plaintiffs have already filed three complaints, the Court will not grant leave for another amendment. Furthermore "[c]ourts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint." *Mitchell v. Deutsche Bank & Trust Co.*, Civ. A. No. 3:10-CV-1812-BH, 2012 WL 1670168, *3 (N.D. Tex. 2012), *citing Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995), *cert. denied*, 516 U.S. 1166 (1996), *citing George v. King*, 837 F.2d 705, 708 n.2 (5th Cir. 1988).  Moreover, Plaintiffs have failed to serve the other two named Defendants.

Accordingly, the Court

ORDERS that this case is DISMISSED with prejudice.

**SIGNED** at Houston, Texas, this <u>13th</u> day of <u>July</u>, 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE